BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION ) ) ) ) ) | MDL NO. 3124 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF LEDUC MONTGOMERY TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), Rule 6.2(e), Plaintiff Alicia LeDuc Montgomery in the case styled *LeDuc Montgomery v. AT&T, Inc.*, No. 3:24-cv-05581, filed in the U.S. District Court for the Western District of Washington ("Plaintiff"), submits this response to the pending Motion for Transfer of Actions to the Northern District of Georgia Pursuant to 28 U.S.C. § 1407 for Consolidated or Coordinated Pretrial Proceedings ("*AT&T Motion*"), ECF No. 7.

Plaintiff supports the request for coordination or consolidation pursuant to 28 U.S.C. § 1407; but asserts that there is broader group of related actions with which the actions identified here should be consolidated as set forth in a parallel motion for centralization and transfer filed in *In re Snowflake Data Breach Litigation*, MDL No. 3126. *See* Plaintiff Emmanuel Chaidez's Corrected Motion for Transfer and Centralization of Related Actions to the District of Montana Pursuant to 28 U.S.C. § 1407 for Consolidated Pretrial Proceedings, MDL No. 3126, ECF No. 3 (J.P.M.L. 2024) ("*Snowflake Motion*").

All of the actions which are the subject of the *AT&T Motion* involve claims asserted against AT&T for the wrongful compromise and exfiltration of wireless customers' call and text message records. Importantly, however, this data was stored on a third-party cloud platform, Snowflake, Inc., and is implicated in a much broader data breach involving the access and

1

exfiltration of data from an estimated 165 of Snowflake client's accounts in April 2024 (the "Snowflake Data Breach"). As the date of the *Snowflake Motion*, at least 43 class actions have been filed asserting claims involving the Snowflake Data Breach against at least seven defendants, including AT&T entities.

Given that there is a singular overarching data breach which is common to the cases tagged in both the *AT&T Motion* and the *Snowflake Motion*, which will necessarily involve overlapping issues, as well as potential issues of indemnification, Plaintiff respectfully requests that the Panel coordinate all related cases implicated by the *AT&T Motion* with those cases implicated by the *Snowflake Motion*, and that all cases be transferred to the U.S. District Court for the District of Montana for coordinated or consolidated proceedings.

## I.   BACKGROUND

As the *AT&T Motion* acknowledges, the underlying cases allege that AT&T suffered a data breach, which implicated the phone call and text message records of nearly all of AT&T's wireless customers from May 1, 2022 to October 31, 2022 and January 2, 2023. Because the information identifies each telephone number that an AT&T cellular number interacted with during this time period, it also includes the records of consumers who receive their phone service from carriers other than AT&T—estimated to be more than 100 million cellular and landline customers in total. The compromised data includes an array of highly personal information for each customer, including phone numbers, call durations, call times, cell site identification numbers, and other sensitive information (the "Call Log Information"). AT&T had uploaded the Call Log Information to the servers of a third-party company, Snowflake, which provides cloud-based services.

Beginning in April 2024, a cybercriminal threat actor group began a series of targeted attacks to infiltrate Snowflake's systems, in which cybercriminals accessed and exfiltrated data from numerous Snowflake client accounts. Snowflake engaged third-party cybersecurity firm,

Mandiant, which subsequently identified a threat campaign targeting Snowflake customer database instances with the goals of data theft and extortion. According to Mandiant, a financially motivated threat actor, UNC5537, was able to access Snowflake customer accounts by using stolen customer credentials to access and exfiltrate "a significant volume of customer data."[1] After exfiltrating the data from Snowflake customer accounts, the threat actor began to advertise the data for sale on the dark web.

To date, Snowflake has notified approximately 165 of its clients—including AT&T, Ticketmaster, Advance Auto Parts, Neiman Marcus, and many others—that their customer data has potentially been exposed in the Snowflake Data Breach.

The Snowflake Data Breach is an example of a "hub-and-spoke" data breach. At the "hub" or center of the breach is Snowflake—a publicly traded, Bozeman, Montana company which provides various cloud-based services—connected to which are its hundreds of "spoke" client-companies ("Spoke Defendants"). These Snowflake Spoke Defendants had in turn uploaded the data of hundreds of millions of their customers to Snowflake's cloud platform.

As set forth in the *Snowflake Motion*, there are approximately 43 cases filed across the country which implicate the Snowflake Data Breach ("Snowflake Related Actions").[2] Some plaintiffs have sued Snowflake only, other have sued both Snowflake and the related "Spoke Defendant," others still have named only the Spoke Defendant.[3] However, what is common to all

---

[1] *See* Mandiant, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion* (June 10, 2024), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion.

[2] *See* Corrected Schedule of Actions, *In re Snowflake Data Breach Litigation*, ECF No. 3-2 (J.P.M.L. 2024) ("Schedule of Actions").

[3] In this regard, one of the cases referenced by the *AT&T Motion* also names Snowflake, Inc. *See Olivieri, et. al v. Snowflake, Inc., et. al*, No. 2:24-cv-00056 (D. Mont).

of the Snowflake Related Actions is that they assert claims arising from a common nucleus of operative facts: the Snowflake Data Breach.

According to the various data breach notices issued by the Spoke Defendants, the data exposed includes PII, including names, addresses, email addresses, phone numbers, dates of birth, Social Security numbers, driver's license numbers, government ID numbers, and AT&T's Call Log Information.

Upon information and belief, the computer systems implicated in the Snowflake Data Breach were designed and maintained by Snowflake's employees in Montana.

## II.     ARGUMENT

**A.     Transfer of All Related Actions for Consolidation and Coordination Is Appropriate Under 28 U.S.C. § 1407 Because There Are Common Questions of Fact.**

The Motion seeks to consolidate for pretrial purposes four (4) actions pending in three (3) different federal Districts, along with other tag-alongs ("AT&T Related Actions"), to the Northern District of Georgia for coordination and consolidation pursuant to 28 U.S.C. § 1407. *AT&T Motion* at 1. The AT&T Related Actions assert common facts premised on allegations that AT&T failed to secure Plaintiffs' Call Log Information stored on Snowflake's cloud platform. *Id.* at 1-2. As such, each of the allegations in the AT&T Related Actions necessarily implicates the Snowflake Data Breach and thus involves overlapping claims, classes, legal issues and causes of action with the Snowflake Related Actions. Accordingly, centralization is appropriate but should be expanded to include all actions that assert allegations arising out of the Snowflake Data Breach—the Snowflake Related Actions—in order to prevent duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and conserve judicial resources.

The Panel has applied similar treatment to another "hub and spoke data breach," *In Re: MOVEit Customer Data Security Breach Litigation*, which involved over 100 actions in 22

districts arising from allegations that plaintiffs' PII was accessed and exploited by cybercriminals due to a vulnerability in the cloud file transfer services of the defendant software company, Progress (the "hub defendant"). This, in turn, impacted Progress's clients, who used its cloud file transfer services (the "spoke defendants"), and ultimately harmed a class of over 55 million customers of those spoke defendants. *In Re: MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, 699 F.Supp.3d 1402, 1405 (J.P.M.L. 2023). As here, the *MOVEit* plaintiffs brought allegations against various combinations of defendants; however, the Panel held that, given the "MOVEit vulnerability is at the core of all of the cases . . . disentangling the allegations against Progress[] from the allegations against other defendants in the same case seems impracticable, if not impossible." *Id*. at 1405-1406. "[W]e are of the opinion that the parties can obtain significant efficiencies by placing all actions concerning the vulnerabilities in the MOVEit software before a single judge." *Id*. at 1406.

      Transfer and centralization will have the benefits of mitigating the possibility of inconsistent rulings, including rulings regarding class certification, and promoting judicial economy by providing a single forum to which future filed tag-along actions can be transferred. In this regard, the fact that Snowflake is named as a defendant in at least one of the cases implicated by the *AT&T Motion*[4] would present case management difficulties should this motion be granted in its entirety. For instance, if Snowflake were named as a defendant in an MDL specific to AT&T, Snowflake would potentially be subject to two MDL proceedings regarding the same factual and legal allegations, which would likely require coordination between the different MDL proceedings and therefore decrease the efficiencies sought to be gained through the MDL process.

---

[4] *See* ECF No. 7 at 1 (*citing Olivieri and Woon v. AT&T, Inc.; AT&T Mobility, LLC; and Snowflake, Inc.*, No. 2:24-cv-00056 (D. Mont.)).

Because the Snowflake Related Actions involve numerous common questions of fact and law, and consolidation will be more convenient for the parties and witnesses, and will also promote the just and efficient conduct of this litigation, the Panel should transfer and consolidate the instant cases in a single district. *See* 28 U.S.C. § 1407.

**B.     The District of Montana Is the Most Appropriate Transferee Forum Under a Balancing of the Factors.**

For the reasons set forth in the *Snowflake Motion*, Plaintiff LeDuc Montgomery supports transfer and centralization of the Snowflake Related Actions in the United States District Court for the District of Montana.[5] In short, Montana is the nexus of Snowflake's operations.[6] Given that the Snowflake Data Breach is common to the Related Actions (as the "hub" of the Snowflake Data Breach), Snowflake's documents, relevant witnesses, and other evidence will all be highly relevant to the Related Actions. Thus, transfer to Montana is appropriate because Snowflake—the common denominator in all of the Snowflake Related Actions—is located there, and transfer would serve the convenience of the parties and prevent duplicative discovery. While there are some plaintiffs who have sued only the Spoke Defendant with whom they entrusted their data, "in deciding the question of centralization, [the Panel] must consider the needs of all parties and view the litigation as a whole." *In re MOVEit Customer Data Sec. Breach Litig.*, No. 3038, 2023 WL 6456749 at *3 (J.P.M.L. 2023) (consolidating 101 data breach actions across 22 districts actions in Massachusetts, where MOVEit is headquartered).

As of the filing of the *Snowflake Motion*, of the 8 actions filed against Snowflake alone, all but one are already pending in the District of Montana.[7] But there are also 7 actions pending against Spoke Defendants as well as against Snowflake that have been filed across

---

[5] *See Snowflake Motion*, ECF No. 3-1 at 4-11.
[6] *See id.* at 7-9.
[7] *See* Schedule of Actions.

approximately 3 additional districts. That there are an increasing number of cases filed outside the District of Montana that name both a Spoke Defendant and Snowflake as defendants suggests that centralization is necessary "to avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification." *In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, MDL No. 3098, 2024 WL 156923, at *1 (J.P.M.L. 2024).

Given that there is already a concentration of cases against Snowflake in the District of Montana, coupled with Montana's central location in the middle of the United States, which makes it generally accessible for all parties, the District of Montana is the most convenient forum for coordination or consolidation of the Related Actions.

Finally, the District of Montana's docket is less congested than any of the districts where a Related Action is pending. In this regard, only 576 civil actions were pending during the 12-month period ending March 31, 2024, the three active district judges had approximately 192 civil cases each.[8] Further, as of last month, there are no MDLs in the District of Montana. In contrast, the Central District of California, the Northern District of Texas, and the other districts where significant numbers of Related Actions are pending already have numerous pending MDLs. Thus, the District of Montana has the resources to dedicate to an MDL of this magnitude.

### III.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Panel grant the Movant's request for coordination or consolidation pursuant to 28 U.S.C. § 1407 but deny the request to centralize the cases in the Northern District of Georgia. Instead, for the reasons set forth herein and in the *Snowflake Motion*, Plaintiff respectfully requests that the Panel centralize

---

[8] United States Courts, *Table C-1 U.S. District Courts–Civil Federal Judicial Caseload Statistics (Mar. 31, 2024)*, https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2024/03/31.

the Related Cases in the District of Montana and designate the Honorable Brian Morris, Chief Judge of the District of Montana, as the transferee judge.

Dated: August 19, 2024

Respectfully submitted,

*/s/ Cari Campen Laufenberg*
Cari Campen Laufenberg
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue
Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
claufenberg@kellerrohrback.com

***Counsel for Plaintiff Alicia LeDuc Montgomery***